OPINION *Page 2 
{¶ 1} Defendant-Appellant Angel McGilton appeals her conviction and sentence in the Muskingum County Court of Common Pleas on one count of trafficking in prescription drugs. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On March 17, 2007, Appellant visited a Zanesville bar with her mother. Earlier in the day, an acquaintance by the name of Christopher Stamn telephoned Appellant asking her to provide him with some prescription pain medication. Stamn arrived at the bar as a passenger in a vehicle, which parked next to a vehicle occupied by two undercover police officers. The officers recognized Stamn.
 {¶ 3} Stamn entered the bar and approached Appellant. Appellant and Stamn then left the bar, and proceeded to Stamn's car. Appellant entered the rear driver's side seat facing toward Stamn, produced a pill bottle from inside her purse, opened it and handed the contents to Stamn. Officer Coury observed the transaction. Appellant then returned to the bar, and the officers apprehended Stamn, who threw the pills onto the floorboard of the vehicle. The officers found four Vicodin pills on the floor of the car.
 {¶ 4} Appellant was apprehended inside the bar with the same purse. Inside the purse, the officers found a pill bottle containing Vicodin and Xanax. Appellant admitted to giving Stamn Vicodin, but denied selling the pills for money.
 {¶ 5} Appellant was indicted on one count of trafficking in prescription drugs. Following a jury trial, Appellant was found guilty, and sentenced to nine months incarceration.
 {¶ 6} Appellant now appeals, assigning as error: *Page 3 
 {¶ 7} "I. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER ADMISSION OF TESTIMONIAL EVIDENCE IN VIOLATION OF THE RIGHT OF CONFRONTATION.
 {¶ 8} "II. THE JUDGMENT OF CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND THE VERDICT WAS OTHERWISE AGAINST THE MANIFEST WEIGHT OF THAT EVIDENCE.
 {¶ 9} "III. THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS WHEN THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY.
 {¶ 10} "IV. THE DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 11} "V. THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS BY CUMULATIVE ERROR.
 {¶ 12} "VI. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT-APPELLANT TO A PRISON TERM INSTEAD OF COMMUNITY CONTROL AND TO A TERM IN EXCESS OF THE MINIMUM."
 I. {¶ 13} In the first assignment of error, Appellant argues she was denied her due process right to confront witnesses. Specifically, Appellant cites an alleged hearsay statement made by Christopher Stamn to a police officer while in custody relative to Appellant's knowledge of his (Stamn's) desire for prescription medication. Appellant cites the following exchange at trial during the testimony of Christopher Stamn:
 {¶ 14} "Q. All right. Were you interviewed by Detective Coury?
 {¶ 15} "A. I'm not sure which cop it was. *Page 4 
 {¶ 16} "Q. Okay. Do you recall telling Detective Coury that Angel knows that you like pills?
 {¶ 17} "A. Excuse me?
 {¶ 18} "Q. Do you recall telling Detective Coury, or whoever interviewed you, that Angel knows that you like pills?
 {¶ 19} "A. I don't remember saying that.
 {¶ 20} "Mr. Welch: Your Honor, may I approach, the witness?
 {¶ 21} "The Court: Certainly.
 {¶ 22} "Q. Did you have an opportunity to review this statement outside?
 {¶ 23} "A. Yeah. I read that part of it.
 {¶ 24} "Q. Okay. And are you able to read okay?
 {¶ 25} "A. Yeah.
 {¶ 26} "Q. Okay. Could you read this right here? You don't have to read it out loud, but can you read this part?
 {¶ 27} "A. Yeah. I see it.
 {¶ 28} "Q. Okay. Do you remember telling Detective Coury that Angel knows that you like pills?
 {¶ 29} "A. I was just meaning that that's what helps me, Vicodins. That's what I meant by that.
 {¶ 30} "Q. Okay. But you said that she knows that you like pills. Correct?
 {¶ 31} "A. I mean, I don't know if she knew that; but I knew that's what helped was the Vicodins.
 {¶ 32} "Q. Okay. But you told the detective she knew that you liked pills? *Page 5 
 {¶ 33} "A. I didn't know if she knew — if she did or not.
 {¶ 34} "Q. But that's what you told the detective. Right?
 {¶ 35} "A. I guess. That's what it says.
 {¶ 36} "Q. Okay. And she offered to give you some pills in the bar?
 {¶ 37} "A. Yeah.
 {¶ 38} "Q. And did she tell you what type of pills those were?
 {¶ 39} "A. She just said they were some pain pills.
 {¶ 40} "Q. Did she tell you they were Vicodin?
 {¶ 41} "A. I don't remember. It's been a while.
 {¶ 42} "Mr. Welch: Your Honor, may I approach the witness?
 {¶ 43} "The Court: Certainly.
 {¶ 44} "Q. Go ahead and read from right here.
 {¶ 45} "A. (Complies with request).
 {¶ 46} "Q. Does that help refresh your memory?
 {¶ 47} "A. (Nodded).
 {¶ 48} "The Court: Is that a yes?
 {¶ 49} "The Witness: Yes.
 {¶ 50} "Mr. Welch: You need to say it out loud. Thank you.
 {¶ 51} "A. Yes.
 ¶ 52} "Q. What type of pills were they?
 {¶ 53} "A. Vicodin."
 {¶ 54} Tr. at 125-128. *Page 6 
 {¶ 55} Appellant cites Crawford v. Washington (2004), 541 U.S. 36, asserting the testimony is impermissible hearsay admitted in violation to his right of confrontation.
 {¶ 56} In Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177, the Supreme Court rejected the practice of allowing the use of an unavailable witness's out-of-court statement if it had sufficient indicia of reliability, reasoning that the practice violated the accused's right to confront the witnesses against him.Crawford held that a testimonial statement from a witness who does not appear at trial is inadmissible against the accused unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. Id. at 59, 124 S.Ct. 1354, 158 L.Ed.2d 177.Id.
 {¶ 57} Upon review of the record, Stamn's prior statements were introduced merely to refresh his recollection, as a prior inconsistent statement. Stamn was available at trial and did testify. Further, Appellant had the opportunity to, and did in fact, cross-examine Stamn during trial. Appellant was not denied his right to confront the witness.
 {¶ 58} The first assignment of error is overruled.
 II. {¶ 59} In the second assignment of error, Appellant argues her conviction was against the manifest weight and sufficiency of the evidence.
 {¶ 60} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Thompkins, 78 Ohio St .3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, superseded by constitutional amendment on other grounds as stated by State v. Smith, *Page 7 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins, supra at 78 Ohio St.3d 390.
 {¶ 61} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, superseded by the State constitutional amendment on other grounds as stated in State v. Smith (1997),80 Ohio St.3d 89.
 {¶ 62} Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks, supra. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Thompkins, 78 Ohio St.3d at 386.
 {¶ 63} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised *Page 8 
only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N .E.2d 541 super ceded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89,1997-Ohio-355, 684 N .E.2d 668, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 64} Appellant was convicted of trafficking a prescription medication, in violation of R.C. 2925.03(A)(1), which reads:
 {¶ 65} "(A) No person shall knowingly do any of the following:
 {¶ 66} "(1) Sell or offer to sell a controlled substance;" Appellant herein argues the State failed to prove the drug involved was a controlled substance pursuant to R.C. 3719.41 beyond a reasonable doubt. However, upon review of the record, the parties entered into the following stipulation introduced at trial:
 {¶ 67} "Mr. Welch: Your Honor, at this time there would be a stipulation between the parties.
 {¶ 68} "The Court: If you would, read that. And this is an agreed stipulation, Mr. Crawmer?
 {¶ 69} "Mr. Crawmer: That is correct, Your Honor.
 {¶ 70} "The Court: Thank you. Mr. Welch.
 {¶ 71} "Mr. Welch: Your Honor, the parties agreed that — *Page 9 
 {¶ 72} "The Court: Just one moment, Mr. Welch. This is a stipulation that the parties, both sides, have agreed is to be presented to the jury as accepted by the jury. Go ahead, Mr. Welch.
 {¶ 73} "Mr. Welch: If called as a witness, Gregory Kiddon, a forensic scientist with the Bureau of Criminal Identification and Investigation, would testify that four pills recovered by Lieutenant Coury from Christopher Stamn were submitted for testing. Further, Mr. Kiddon would testify that after analysis it was determined that the four pills were all found to be hydrocodone acetaminophen, Vicodin, and that hydrocodon acetaminophen, Vicodin, is a Schedule III controlled substance. Finally, Mr. Kiddon would testify that the amount of hydrocodone acetaminophen, Vidodin, was less than bulk.
 {¶ 74} "Mr. Welch: Thank you, Your Honor.
 {¶ 75} "Thank you, Mr. Welch."
 {¶ 76} Tr. at 133-134.
 {¶ 77} The indictment sub judice states Appellant "did knowingly sell, or offer to sell, Hydrocodone Acetaminophen (Vicodin), a Schedule III controlled substance, in an amount less than the bulk amount;" Accordingly, we find Appellant's conviction is not against the manifest weight and sufficiency of the evidence relative to proof of a controlled substance.
 {¶ 78} The second assignment of error is overruled.
 III. {¶ 79} In the third assignment of error, Appellant argues the trial court failed to properly instruct the jury as to accomplice credibility. *Page 10 
 {¶ 80} The State argues Christopher Stamn was not an accomplice, as he was not indicted for complicity. The State relies on the Ohio Supreme Court decision in State v. Wickline 1990), 50 Ohio St.3d 114:
 {¶ 81} "According to common usage, FN1 the term "accomplice" means:
 {¶ 82} "FN1. See R.C. 1.42.
 {¶ 83} "* * * [O]ne who is guilty of complicity in crime charged, either by being present and aiding or abetting in it, or having advised and encouraged it, though absent from place when it was committed, though mere presence, acquiescence, or silence, in the absence of a duty to act, is not enough, no matter how reprehensible it may be, to constitute*1 18 one an accomplice. One is liable as an accomplice to the crime of another if he gave assistance or encouragement or failed to perform a legal duty to prevent it with the intent thereby to promote or facilitate commission of the crime. * * *" (Emphasis added.) Black's Law Dictionary (5 Ed. 1979) 16.
 {¶ 84} "Certainly, a person who is guilty of complicity must first befound guilty of complicity by either a judge or a jury. Obviously, the first step in finding a person guilty of an offense is by indicting that person. So, at the very least, an "accomplice" must be a person indicted for the crime of complicity."
 {¶ 85} The record reflects Stamn was charged with possession of a controlled substance, a misdemeanor, and he entered a plea of guilty to the offense. We find Stamn was an accomplice. Even had Stamn not been charged, we would be hard pressed not to find he was an accomplice. We find the trial court erred in failing to give the accomplice instruction. However, we find the error to be harmless error in light of the eye-witness testimony of the police officers and the Appellant's admission. *Page 11 
 {¶ 86} The third assignment of error is overruled.
 IV. {¶ 87} In the fourth assignment of error, Appellant asserts she was denied the effective assistance of counsel. Specifically, Appellant cites counsel's alleged trial strategy in having Appellant "confess to the crime in the hope of obtaining a `jury nullification' acquittal. Appellant argues counsel should have objected to the hearsay evidence, moved for a directed verdict because of the lack of reference to R.C. 3719.41, and requested instructions on the complete definition of controlled substances and accomplice credibility, all of which would have been successful.
 {¶ 88} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 89} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 90} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Page 12 
 {¶ 91} This court must accord deference to defense counsel's strategic choices made during trial and "requires us to eliminate the distorting effect of hindsight." State v. Post (1987), 32 Ohio St.3d 380, 388.
 {¶ 92} In evaluating appellant's claim of ineffective assistance of counsel, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."Id., at ¶ 31, citing Strickland, supra, at 689. In addition, we are mindful that "[t]rial counsel cannot be second-guessed as to trial strategy decisions." Id. The law is well settled that counsel's actions that might be considered trial strategy are presumed effective and should not be second-guessed by a reviewing court. State v. Adams, 103 Ohio St.3d. at ¶ 30.
 {¶ 93} Based upon the above, we are hesitant to second-guess Appellant's counsel's trial strategy of jury nullification. Further, based upon our analysis and disposition of the first two assignments of error, we do not find counsel's performance was ineffective. Nor do we find counsel's failure to request an accomplice instruction created a reasonable probability the outcome of the trial would have been different for the reasons set forth in our discussion thereof.
 {¶ 94} The fourth assignment of error is overruled.
 V. {¶ 95} In the fifth assignment of error, Appellant argues she was denied a fair trial due to cumulative error.
 {¶ 96} Again, based upon our analysis and disposition of the first four assignments of error, we overrule the fifth assignment of error. *Page 13 
 VI. {¶ 97} In the sixth and final assignment of error, Appellant argues the trial court erred in sentencing Appellant to a prison term instead of community control, and in imposing a term in excess of the minimum required by law.
 {¶ 98} In State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470,2006-Ohio-856, the Supreme Court of Ohio addressed constitutional issues concerning felony sentencing and held that portions of Ohio's felony sentencing framework were unconstitutional and void, including R.C. 2929.14(B) requiring judicial findings that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender, and R.C. 2929.14(C) which requires judicial fact-finding for maximum prison terms. See Foster, 2006-Ohio-856 at ¶ 97, 103. Regarding new sentences and re-sentences, the Supreme Court of Ohio stated, "we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster at ¶ 100; See also State v. Mathis,109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855. Accordingly, trial courts are vested with discretion to impose a prison term within the statutory range.
 {¶ 99} In Mathis, supra, decided the same day as Foster, the Supreme Court of Ohio provided, in relevant part, as follows:
 {¶ 100} "As we have held in Foster, however, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the *Page 14 
minimum sentences . . . the trial court will have discretion to sentencing within the applicable range, following R.C. 2929.19
procedures."
 {¶ 101} A trial court must still consider the overall purposes of sentencing as set forth in R.C. 2929.11, as well as the factors relating to the seriousness of the offense and recidivism of the offender under R.C. 2929.12, when sentencing an offender. State v. Smith, 3rd Dist. No. 2-06-37, 2007-Ohio3129 at ¶ 26 citing Mathis, 2006-Ohio-855 at ¶ 38. But, under R.C. 2929.12, a sentencing court is not required to use specific language regarding its consideration of the seriousness and recidivism factors. Id. citing State v. Sharp 10th Dist. No. 05AP-809,2006-Ohio-3448; State v. Amett (2000), 88 Ohio St.3d 208, 205;724 N.E.2d 793, 2000-Ohio-302; State v. McAdams, 162 Ohio App.3d 318;833 N.E.2d 373, 2005-Ohio-3895; and State v. Patterson, 8th Dist. No. 84803,2005-Ohio-2003. Further, there is no requirement in R.C. 2929.12 that the trial court state on the record that it has considered the statutory criteria or even discussed them. Id. citing State v. Polick (1995),101 Ohio App.3d 428, 431; 655 N.E.2d 820; State v. Gant, 7th Dist. No. 04-MA-252, 2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings); State v. Hughes 6th Dist. No. WD-05-024, 2005-Ohio-6405
(trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable).
 {¶ 102} Upon review of the record, the sentence imposed was in accordance with the Ohio Supreme Court holding in Foster and Ohio's sentencing statutes. The trial court had full discretion in sentencing Appellant within the statutory range, and the sentence imposed fell within the statutory range for the offense. *Page 15 
 {¶ 103} The sixth assignment of error is overruled.
 {¶ 104} For the foregoing reasons, Appellant's conviction and sentence in the Muskingum County Court of Common Pleas is affirmed.
 Hoffman, P.J., Wise, J., and Delaney, J., concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's conviction and sentence in the Muskingum County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1